No. 10-2193

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

MARK FRAPPIER,
Plaintiff-Appellant,

v.

COUNTRYWIDE HOME LOANS, INC.,
Defendant-Appellee.

On Appeal from Judgment in the
United States District Court for the District of Massachusetts

**BRIEF FOR DEFENDANT-APPELLEE**

James W. McGarry (1st Cir. Bar No. 56839)
jmcgarry@goodwinprocter.com
Brook L. Ames (1st Cir. Bar No. 1135044)
bames@goodwinprocter.com
Mark T. Knights (1st Cir. Bar No. 1143456)
mknights@goodwinprocter.com
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
Tel.  617.570.1000
Fax  617.523.1231

Dated:  February 7, 2011

CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee Countrywide Home Loans, Inc. states that it is a wholly-owned subsidiary of the publicly-held Bank of America Corporation and that no other publicly-held company currently owns 10% or more of Countrywide Home Loans, Inc.'s stock.

COUNTRYWIDE HOME LOANS, INC.

By its attorney,

/s/ Mark Tyler Knights
James W. McGarry (1st Cir. Bar No. 56839)
jmcgarry@goodwinprocter.com
Brook L. Ames (1st Cir. Bar No. 1135044)
bames@goodwinprocter.com
Mark T. Knights (1st Cir. Bar No. 1143456)
mknights@goodwinprocter.com
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
Tel.  617.570.1000
Fax  617.523.1231

Dated:  February 7, 2011

i

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ......................................................................... iv

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................1

STATEMENT OF THE CASE.........................................................................2

    I.     Nature of the Case ................................................................. 2
    II.    Course of Proceedings and Disposition Below .................................. 3

STATEMENT OF FACTS ...............................................................................5

    I.     Frappier's Extensive Mortgage Loan History...................................... 5
    II.    Frappier Applies for a Loan from Countrywide ................................. 6
    III.   Frappier Obtains a Loan from Countrywide, and Defaults................ 10

SUMMARY OF THE ARGUMENT ....................................................................11

STANDARD OF REVIEW ...............................................................................13

ARGUMENT ..................................................................................................14

    I.     THE DISTRICT COURT PROPERLY GRANTED SUMMARY
          JUDGMENT IN FAVOR OF COUNTRYWIDE ON ALL OF
          FRAPPIER'S CLAIMS.......................................................... 16

          A.    The District Court Properly Considered Only the October
                2006 Loan in Granting Countrywide's Motion for
                Summary Judgment ...............................................................17

          B.    The District Court Properly Granted Summary Judgment
                for Countrywide on Frappier's Unjust Enrichment Claim .......19

          C.    The District Court Properly Granted Summary Judgment
                for Countrywide on Frappier's Claim for Breach of the
                Covenant of Good Faith and Fair Dealing................................23

          D.    The District Court Properly Granted Summary Judgment
                for Countrywide on Frappier's Negligence Claim .................25

          E.    The District Court Properly Granted Summary Judgment
                for Countrywide on Frappier's ch. 93A Claim .........................29

ii

II.    THIS COURT SHOULD REJECT FRAPPIER'S ATTEMPT TO PRESENT ISSUES BEYOND THOSE BEFORE THE DISTRICT COURT ............................................................................................ 31

CONCLUSION ..................................................................................34

CERTIFICATE OF COMPLIANCE........................................................35

CERTIFICATE OF SERVICE ...............................................................36

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Blais v. Warren Five Cents Sav. Bank,*
No. 9218, 1993 WL 488429 (Mass. App. Div. Dist. Ct, Nov. 22, 1993)...........27

*Blue Hills Office Park LLC v. J.P. Morgan Chase Bank,*
477 F. Supp. 2d 366 (D. Mass. 2007)..........................................................24, 29

*Bueller v. Carey,*
No. 00-P-1318, 2003 WL 193958 (Mass. App. Ct. Jan. 29, 2003)...................29

*Cahaly v. Benistar Prop. Exch. Trust Co., Inc.,*
68 Mass. App. Ct. 668, 864 N.E.2d 548 (Mass. App. Ct. 2007).......................27

*Campana v. Eller,*
755 F.2d 212 (1st Cir. 1985)..............................................................................18

*Cmty. Builders, Inc. v. Indian Motocycle Associates, Inc.,*
44 Mass. App. Ct. 537, 692 N.E.2d 964 (Mass. App. Ct. 1998).......................20

*Commonwealth v. Fremont Inv. & Loan,*
No. 07-4373-BLS1, 2008 WL 517279 (Mass. Super. Ct. Feb. 26, 2008)..........30

*Cortes Quinones v. Jimenez Nettleship,*
773 F.2d 10 (1st Cir. 1985).........................................................................17, 18

*Delnegro v. Hampton,*
No. 00WAD005, 2001 WL 242210 (Mass. App. Div. Dist. Ct. Mar. 7,
2001) ..................................................................................................................26

*Demoulas v. Demoulas,*
428 Mass. 555, 703 N.E.2d 1149 (Mass. 1998) ...............................................22

*Giles v. Ramos,*
No. 06-P-154, 2007 WL 328757 (Mass. App. Ct. Feb. 2, 2007) ......................20

*Gorski v. N.H. Dep't of Corr.,*
290 F.3d 466 (1st Cir. 2002)..............................................................................14

*In re Fordham*,
  130 B.R. 632 (Bankr. D. Mass. 1991) ................................................26

*In re Net-Velazquez*,
  625 F.3d 34 (1st Cir. 2010) .................................................................34

*Iverson v. City of Boston*,
  452 F.3d 94 (1st Cir. 2006).................................................................33

*Lechoslaw v. Bank of Am., N.A.*,
  575 F. Supp. 2d 286 (D. Mass. 2008) ................................................26

*Levesque v. Ojala*,
  No. 20034485, 2005 WL 3721859 (Mass. Super. Ct. Dec. 8, 2005) .................27

*Murray v. America's Servicing Co.*,
  No. 2007-01716, 2009 WL 323375 (Mass. Super. Ct. Jan. 12, 2009) .........23, 26

*Renovator's Supply, Inc. v. Sovereign Bank*,
  72 Mass. App. Ct. 419, 892 N.E.2d 777 (Mass. App. Ct. 2008).................24, 25

*Vega-Colon v. Wyeth Pharm.*,
  625 F.3d 22 (1st Cir. 2010).........................................................13, 14


**STATUTES**

28 U.S.C. § 1332.....................................................................................4

Mass. Gen. Laws ch. 93A ................................................................passim

Mass. Gen. Laws ch. 183 ......................................................................33

Mass. Gen. Laws ch. 183, § 28C ..........................................................32


**OTHER AUTHORITIES**

F.R.A.P. 32(a)(7)(B) ..............................................................................35

F.R.A.P. 32(a)(7)(C) ..............................................................................35

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

I.    Whether the District Court properly granted summary judgment for defendant/appellee Countrywide Home Loans, Inc. ("Countrywide") on each of plaintiff/appellant Mark Frappier's ("Frappier") claims based solely on the mortgage loan granted in October 2006, where Frappier's Complaint failed to identify any other loan at issue?

II.    Whether the District Court properly granted summary judgment for Countrywide on Frappier's claim for unjust enrichment where Frappier failed to present any evidence that Countrywide's conduct was unjust or inequitable?

III.    Whether the District Court properly granted summary judgment for Countrywide on Frappier's claim for breach of the implied covenant of good faith and fair dealing where Frappier failed to present any evidence that Countrywide interfered with his ability to enjoy the benefits of his mortgage loan?

IV.    Whether the District Court properly granted summary judgment for Countrywide on Frappier's negligence claim where Frappier failed to present any evidence that Countrywide either owed him a duty of care or breached any duty?

V.    Whether the District Court properly granted summary judgment for Countrywide on Frappier's claim under Mass. Gen. Laws ch. 93A where Frappier failed to present any evidence that Countrywide granted him a mortgage loan knowing that he was likely to default?

1

## STATEMENT OF THE CASE

### I.    *Nature of the Case*

This appeal is brought by plaintiff/appellant Mark Frappier ("Frappier"), recipient of a mortgage loan issued by defendant/appellee Countrywide Home Loans, Inc. ("Countrywide") and secured by Frappier's property in Southwick, Massachusetts.  Frappier's loan from Countrywide was a stated-income, stated-asset loan – when considering whether to grant Frappier a loan, Countrywide took Frappier at his word regarding the amount of his income and did not independently verify that amount.  As it turned out, Frappier actually earned less money per month than he represented to Countrywide.  Frappier later defaulted on his payment obligations and Countrywide foreclosed on his loan.

Frappier claims that Countrywide never should have given him a loan based upon the income he claimed to earn, and that Countrywide should have known that he would default on his mortgage payments.  In connection with this claim, Frappier asserts that Countrywide's employee altered the income amount on his loan application, but provides no factual support from the record for this claim.  Moreover, Frappier admitted that Countrywide's employees obtained the income amount set forth on his loan application from Frappier himself.  Frappier also claims that Countrywide should not have granted him a later second mortgage loan

on the Property, although Frappier failed to reference the second mortgage in his Complaint and the second loan was not a subject of discovery in this action.

In granting Countrywide's motion for summary judgment, the District Court correctly noted that "[t]he terms of the refinanced mortgage were on their face favorable to [Frappier]; at the very least they were comparable to the terms of his previous mortgage." Appendix ("App.") at 471-72. The court also found that that Frappier's default was attributable to "a number of factors, including increased heating costs and his change in jobs, none of which [Countrywide] could have predicted." App. at 472. Regarding the second mortgage loan on the Property, the District Court properly concluded that Frappier had "produced no evidence that the loans were in fact contemplated as a package," that "the complaint itself does not refer to the [second] loan at all," and that "even if the two loans were negotiated together, it is still not clear how or why the terms of such a package were rigged to ensure [Frappier's] failure." App. at 472. The District Court therefore correctly held that Frappier had not presented evidence creating a genuine dispute of material fact as to any of his claims, and granted summary judgment in Countrywide's favor.

## II.    *Course of Proceedings and Disposition Below*

On May 11, 2009, Frappier filed a complaint ("Complaint") in the Massachusetts Superior Court of Suffolk County. App. at 33-42. On June 12,

2009, Countrywide removed the action to the United States District Court for the District of Massachusetts, invoking that court's diversity jurisdiction under 28 U.S.C. § 1332. App. at 26-31. Countrywide filed its answer on June 17, 2009. App. at 7-16.

On April 29, 2010, Countrywide filed a motion for summary judgment ("Motion"). App. at 46-71. Frappier filed an opposition to the Motion on May 24, 2010, and simultaneously filed a cross-motion for summary judgment ("Cross-Motion"). App. at 377-85, 386-87. Countrywide filed a motion to strike the Cross-Motion ("Motion to Strike") on May 25, 2010, and Frappier opposed the Motion to Strike the same date. App. at 388-91, 397-98. Countrywide filed an opposition to the Cross-Motion on June 7, 2010. App. at 399-403.

On June 9, 2010, the District Court heard oral argument and took the matter under advisement. App. at 434-65. Pursuant to the District Court's request, Countrywide submitted a reply brief on June 11, 2010 in support of the Motion in order to address the limited question of whether Frappier's Loan was subject to the Home Ownership and Equity Protection Act ("HOEPA"), as claimed by Frappier's counsel at oral argument. App. at 414-17, 445-62. On June 17, 2010, Frappier submitted a sur-reply, changing positions and admitting that HOEPA did not apply to his Loan. App. at 431-33.

On October 7, 2010, the District Court issued a Memorandum and Order ("Order") on Countrywide's Motion, Frappier's Cross-Motion, and Countrywide's Motion to Strike.  App. at 466-78.  The Order granted Countrywide's Motion in its entirety, denied Frappier's Cross-Motion, and denied Countrywide's Motion to Strike as moot.  *Id.*  On October 7, 2010, judgment was entered in accordance with the District Court's Order of summary judgment in favor of Countrywide.  App. at 479.  This appeal followed.  App. at 480.

## STATEMENT OF FACTS

Frappier's "statement of facts" devotes an inordinate amount of space to setting forth facts that have no relevance to the Court's consideration of the issues raised in this appeal, and yet more space to bare assertions, characterizations of the facts, and logical leaps unsupported by the record in this case.  Therefore, to correct the record and to provide the Court with necessary context, Countrywide submits the following.

### I.    *Frappier's Extensive Mortgage Loan History.*

In 1999, Frappier purchased certain real property at 26 Matthews Road in Southwick, Massachusetts ("Property") with the proceeds of a mortgage loan in the amount of $88,272.  App. at 64 ¶ 1; 289 ¶ 1.[1]  Frappier refinanced this loan several

---

[1]   All citations are to Countrywide's Statement of Undisputed Material Facts ("Statement") and Frappier's admissions in response to the Statement.  If Frappier fails to dispute a fact set forth in the Statement, the Court must deem

5

times, each time pulling more equity out of the property.  App. at 65 ¶ 2; 289 ¶ 2.

Not long after purchasing the Property, Frappier refinanced his mortgage with a

$99,000 loan, and refinanced again shortly after that with a $118,500 loan.  App. at

65 ¶ 2; 289 ¶ 2.  Less than a year later, Frappier refinanced the mortgage a third

time with a $144,000 loan, and in 2005, Frappier refinanced yet again with a loan

in the amount of $193,000.[2]  App. at 65 ¶ 2; 289 ¶ 2.  As a result of this fourth

refinancing, Frappier had monthly mortgage loan payments of $1,500 to $1,700.

App. at 65 ¶ 2; 289 ¶ 2.

## II.    *Frappier Applies for a Loan from Countrywide.*

In March 2006, Frappier divorced his third wife.  App. at 65-66 ¶ 3; 289 ¶ 3.

Under the terms of his divorce agreement, as approved by the Probate and Family

Court, Frappier had an obligation to either sell the Property or refinance the

existing $193,000 mortgage loan to remove his ex-wife's name from the loan and

deed.  App. at 65-66 ¶ 3; 289 ¶ 3.  After Frappier could not timely sell the Property

by the deadline imposed in the agreement by the Probate and Family Court,

Frappier's only alternative was to obtain a refinance of his existing mortgage.

---

that fact as admitted for purposes of Countrywide's Motion for Summary
Judgment.  *See Zimmerman v. Puccio*, 613 F.3d 60, 63 (1st Cir. 2010); *Stonkus
v. City of Brockton Sch. Dept.*, 322 F.3d 97, 102 (1st Cir. 2003).  Citations to
supporting exhibits, all of which are found in the Appendix, are provided in the
Statement.

[2]    In addition to these multiple refinancings, Frappier also took out a home equity
loan on the Property in 2004.  App. at 65 ¶ 2; 289 ¶ 2.

App. at 66 ¶¶ 4-5; 289-90 ¶¶ 4-5.  In October 2006, Frappier approached Richard Mamuszka of Countrywide regarding a refinancing.  App. at 66-67 ¶¶ 5, 8; 290-91 ¶¶ 5, 8.  Frappier told Mr. Mamuzska that it was important to close on the loan quickly, given the divorce agreement and the impending deadline by which he had to refinance the mortgage.  App. at 67 ¶ 8; 290-91 ¶ 8.

Mr. Mamuszka was an experienced loan originator who had worked in the mortgage industry at least twelve years; during that time, he took over a thousand mortgage applications.  App. at 66 ¶ 6; 290 ¶ 6.  Given the number of previous mortgages that Frappier had applied for and received, Frappier had much more experience than most of the borrowers that Mr. Mamuszka dealt with, the majority of whom were first-time homebuyers.  App. at 66-67 ¶ 7; 290 ¶ 7.  After speaking with Mr. Mamuszka, Frappier applied with Countrywide to refinance his existing loan with a new mortgage in the amount of $189,500.  App. at 67 ¶ 10; 291 ¶ 10.

Frappier applied for and received a stated income, stated asset ("SISA") loan from Countrywide.  App. at 67 ¶ 11; 291 ¶ 11.  Countrywide determined whether a borrower could receive for a SISA loan by using the borrower's credit scores – a minimum credit score of 680 would qualify a borrower for a SISA loan.  App. at 67 ¶ 12; 291 ¶ 12.  Since Frappier's credit score was 697 at this time, he qualified for a SISA loan.  App. at 68 ¶ 12; 291 ¶ 12.

When completing the application for a SISA loan, the loan originator asks the borrower for their monthly income. App. at 68 ¶ 13; 291 ¶ 13. The loan originator then enters the amount of income reported by the borrower on the application, and neither the loan originator nor the underwriter independently verifies that amount. App. at 68 ¶ 13; 291 ¶ 13. The borrower must not provide any tax forms, W-2 forms, or pay stubs in order to receive a SISA loan. App. at 68 ¶ 13; 291 ¶ 13. The only employment verification conducted by loan originators for a SISA loan is to place a call to the employer to verify that the borrower does work at his or her stated place of employment. App. at 68 ¶ 14; 291 ¶ 14.

Frappier's application for his loan from Countrywide listed his base employment income as $5,563 per month. App. at 67 ¶ 10; 291 ¶ 10. Mr. Mamuzska obtained this information directly from Frappier himself.[3] App. at 68 ¶ 13; 291 ¶ 13. Mr. Mamuzska did not ask Frappier to provide any pay stubs or tax returns in connection with the refinance loan. App. at 68 ¶ 15; 291 ¶ 15. At the

---

[3]  Frappier's statement of facts asserts, without citation to the record, that Countrywide's employees "created" the income figure of $5,563. Brief of Appellant ("Aplt. Br.") at 3. Similarly, Frappier now "denies ever stating an income amount greater than . . . $3,300/month." Aplt. Br. at 5. Both these assertions contradict Frappier's own admission to the District Court that Mr. Mamuszka obtained that figure from Frappier himself. *Compare* App. at 68 ¶ 13 (stating that "Mr. Mamuszka obtained the information that Mr. Frappier's base monthly employment income was $5,563 from Mr. Frappier himself.") *with id.* at 291 ¶ 13 (admitting Paragraph 13 of the Statement as an undisputed fact). As noted at n.1 *supra*, Frappier's failure to dispute this material fact mandates its admission with respect to Countrywide's Motion.

time he applied to refinance his mortgage, Frappier in fact earned approximately $1,200 per month while working as a janitor, and received an additional $2,100 per month in retirement income.  App. at 67 ¶ 9; 291 ¶ 9.

At the time Frappier submitted his loan application, Mr. Mamuszka had a standard practice to tell borrowers like Frappier to review all their loan documents, and specifically their loan application, to make sure everything was correct.  App. at 68-69 ¶ 16; 291 ¶ 16.  Mr. Mamuszka told borrowers to contact him if anything in the documents was inaccurate, and to sign the documents and return them to him only if everything was correct.  App. at 68-69 ¶ 16; 291 ¶ 16.  Frappier signed and initialed the loan application listing his income as $5,563 per month, and certified that all the information contained in the application was "true and correct."  App. at 69 ¶ 17; 291 ¶ 17.  The application document also warned that Frappier could face "civil liability . . . and/or criminal liability" in the event of "intentional or negligent misrepresentation" of any information contained in the loan application. App. at 69 ¶ 17; 291 ¶ 17.  Moreover, Frappier signed a second document at the closing, certifying that "all of the information" contained on his application regarding his employment, income, assets, and liabilities was "true and complete." App. at 69 ¶ 17; 291 ¶ 17.

### III.     *Frappier Obtains a Loan from Countrywide, and Defaults.*

After Frappier submitted his loan application, Countrywide approved and provided Frappier with a mortgage loan in the amount of $189,500 ("Loan"), secured by a mortgage on the Property.  App. at 69 ¶ 18; 291 ¶ 18.  The Loan had a fixed interest rate for the first seven years of 6.875%, with an adjustable rate for the duration of the Loan.  App. at 69 ¶ 18; 291 ¶ 18.  Before taxes, Frappier had monthly payments of $1,244.88 for the Loan; with taxes included, the payments totaled between $1,500 and $1,600 per month.  App. at 69-70 ¶ 18; 291 ¶ 18.[4]

Frappier admitted that he received copies of documents at the closing, but did not know what happened to them.  App. at 70 ¶ 19; 292 ¶ 19.  After the closing of the Loan, while he was in the process of trying to sell his Property, Frappier packed many of his belongings into storage containers, a process he described as "chaos."  App. at 70 ¶ 19; 292 ¶ 19.  During the process of cleaning out the Property, Frappier admitted that "a lot of things, unfortunately, got thrown out."  App. at 70 ¶ 19; 292 ¶ 19.  Despite this "chaos," Frappier's attorneys produced virtually all of the closing documents for the Loan during the course of discovery

---

[4]     Frappier asserts (again without citation to the record) that his loan from Countrywide had "interest only payments" and that "there was no attempt to qualify Plaintiff at a fully amortized rate."  Aplt. Br. at 3.  Nothing in the evidentiary record supports either of these assertions, as both statements are categorically false.  *See* App. at 171-74 (stating that payments on Loan included principal and interest at a fully amortizing rate).

10

in this action, including copies of his Truth in Lending Disclosure Statement.  App. at 70 ¶ 20; 292 ¶ 20.

Though his payments of $1,500 to $1,600 per month for the Loan were less than or comparable to the mortgage payments for his prior mortgage loan, Frappier began to experience difficulty making payments on his loan between February and April 2008.  App. at 70 ¶ 21; 292 ¶ 21.  Frappier attributed this difficulty to a variety of factors, including the fact that he changed jobs, the high cost of fuel oil, and other incidental expenses.  App. at 70 ¶ 21; 292 ¶ 21.  Frappier approached Mr. Mamuszka about refinancing the Loan with Countrywide, but ultimately could not do so.  App. at 70-71 ¶ 21; 292 ¶ 21.  Frappier ultimately defaulted on the Loan, and Countrywide foreclosed upon the Property pursuant to the terms of the mortgage instrument for the Loan.  App. at 71 ¶ 21; 292 ¶ 21.

## SUMMARY OF THE ARGUMENT

Frappier's appeal fails for the simple reason that he cannot identify any error of law made by the District Court in granting summary judgment to Countrywide on the claims and evidentiary record actually before that court.  In particular, Frappier cannot rely on any facts regarding a second mortgage loan from December 2006 obtained from Countrywide, when Frappier failed to even mention that loan in his Complaint.  Because Frappier failed to identify the second loan as being at issue, Countrywide had no notice that Frappier asserted any claims

11

regarding the second loan, and thus could not conduct full and fair discovery

regarding the December 2006 loan. The District Court properly excluded any

reference to that loan from consideration, and this Court should do likewise.

With respect to the claims actually set forth in the Complaint, the District

Court properly granted summary judgment to Countrywide on Frappier's claim for

unjust enrichment, because Frappier failed to produce any evidence supporting his

theory that Countrywide "knew or should have known" that Frappier would default

on the Loan. Without such evidence, an unjust enrichment claim must fall.

Moreover, because Frappier himself misrepresented his income to Countrywide

when applying for the Loan, he cannot now assert a claim in equity for unjust

enrichment.

Additionally, the District Court properly granted summary judgment to

Countrywide on Frappier's claim for breach of the covenant of good faith and fair

dealing. Frappier's theory relies primarily upon a second mortgage loan that he

failed to mention in the Complaint, and as discussed *supra*, such a loan cannot

form the basis of his claims against Countrywide. Moreover, Frappier's theory of

relief is inconsistent with the elements of his claim for breach of the covenant of

good faith and fair dealing, and Frappier has failed to support his claim by any

evidence in the record. The District Court also correctly granted summary

judgment to Countrywide on Frappier's claim for negligence. Frappier failed to

identify any legal duty that Countrywide owed to him, and to the extent that Countrywide owed Frappier any such duty, the undisputed facts fail to establish that Countrywide breached that "duty."

Similarly, the District Court properly granted summary judgment to Countrywide on Frappier's claim for violation of Mass. Gen. Laws ch. 93A. Frappier premised his Chapter 93A claims on the same, non-actionable conduct underlying his other claims, and his claim must fail for that reason alone. Moreover, stated income, stated asset loans do not inherently violate Chapter 93A, and Frappier has failed to provide any valid legal support for a contrary conclusion.

Finally, the balance of Frappier's claims in his opening brief set forth legal arguments that he failed to make, either at all or in any coherent manner, in the proceedings below.  Having failed to make and preserve these arguments before the District Court, this Court should not permit Frappier, having tested his other arguments before the District Court and found them wanting, to assert these new theories for the first time on appeal.

## STANDARD OF REVIEW

This court reviews a District Court's grant of summary judgment de novo. *See Vega-Colon v. Wyeth Pharm.*, 625 F.3d 22, 25 (1st Cir. 2010).  "In order to overcome a motion for summary judgment, the non-moving party must put forth

specific facts to support the conclusion that a triable issue subsists." *Id.* (citation and quotation marks omitted). The "plaintiff must proffer admissible evidence that could be accepted by a rational trier of fact as sufficient to establish the necessary proposition." *Gorski v. N.H. Dep't of Corr.*, 290 F.3d 466, 475-76 (1st Cir. 2002).

Where the party opposing a motion for summary judgment does not oppose the moving party's statement of facts with a "concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation," the statement of facts will be deemed admitted for purposes of the motion. *Zimmerman*, 613 F.3d at 63 (quoting D. Mass. Local R. 56.1). "Summary judgment for the defendant is appropriate where the evidence is so one-sided that no reasonable person could find in favor of the plaintiff." *Vega-Colon*, 625 F.3d at 25 (citation, quotation marks, and alterations omitted).

## **ARGUMENT**

At thirty-four pages, Frappier's opening brief more than triples the eleven total pages of briefing he submitted to the District Court in connection with Countrywide's Motion and his ill-fated Cross-Motion. These extra pages notwithstanding, it is not until page 27 of his brief – 15 pages into his argument – that Frappier begins to address the elements of the claims he actually asserted against Countrywide in the proceedings below. Frappier spends the bulk of the

14

space leading up to his discussion of those causes of action setting forth new arguments that he never presented to the District Court.  When Frappier finally does finally get around to addressing the elements of his claims, he does not rest his argument upon the Loan he obtained from Countrywide in October 2006, but upon a *second* loan he obtained from Countrywide – a loan that the District Court correctly found that Frappier failed to even refer to in his Complaint and therefore had no bearing on his claims in this litigation.

The simple, straightforward, and undisputed facts of this case establish that Frappier was an experienced borrower who had taken out numerous mortgage loans prior to obtaining the subject loan from Countrywide.  Under a legal obligation to refinance his mortgage pursuant to his divorce agreement, Frappier told Countrywide that his monthly income was several thousand dollars greater than it actually was in order to obtain a new mortgage loan.  The essential theory underlying each of Frappier's claims is that Countrywide should not have trusted him – that all stated income, stated asset loans are inherently unfair and unjust. Frappier fails to cite a single state or federal statute, regulation, or case in effect at the time of his Loan endorsing such a theory – in fact, the very case law Frappier relies upon rejects this claim.

Based upon the undisputed facts, Frappier cannot establish an entitlement to relief under any of his various theories, and this Court should affirm the District Court's grant of summary judgment in favor of Countrywide.

## I.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT IN FAVOR OF COUNTRYWIDE ON ALL OF FRAPPIER'S CLAIMS.

The District Court properly concluded there were no disputed material facts in his case, and that each of Frappier's causes of action must fail on those facts. First, Frappier cannot recover for unjust enrichment because there was nothing unjust or inequitable about Countrywide's conduct in originating the October 2006 Loan.  Second, Frappier cannot recover for a breach of the covenant of good faith and fair dealing because there is no dispute of material fact suggesting that Countrywide engaged in misconduct that deprived Frappier of the benefit of his loan contract.  Third, Frappier cannot recover for negligence because there is no dispute of material fact indicating that Countrywide either owed a duty to Frappier or that Countrywide breached any duty of care.  Fourth, Frappier cannot prevail on his claim under Chapter 93A, which is premised on the same conduct comprising his other claims. [5]  Accordingly, the Court should affirm the District Court's grant of summary judgment in favor of Countrywide.

---

[5]    As noted in the Order, Frappier also had a fifth cause of action for equitable relief, seeking "removal of the loan from [Frappier's] credit history."  *See* App. at 40-41.  The District Court correctly found that this "cause of action" failed to

16

A. **The District Court Properly Considered Only the October 2006 Loan in Granting Countrywide's Motion for Summary Judgment.**

Throughout his entire opening brief, Frappier repeatedly references a December 2006 second loan he received from Countrywide, apparently on the theory that even if his first Loan alone could not support his claims, his two loans in combination might do so. *See*, *e.g.*, Aplt. Br. at 10 (faulting District Court for failing to consider second loan); *id.* at 25 (arguing that Countrywide "knew or should have known that the subject *loans* to [Frappier] were structured to fail") (emphasis added); *id.* at 33 (relying upon Frappier's second loan as a basis for his good faith and fair dealing claim). Frappier asserts these arguments on appeal despite the fact that the District Court unambiguously concluded that it could not consider the December 2006 loan when weighing any of Frappier's claims. *See* App. at 471, 476-77. The reason for the District Court's conclusion is simple – Frappier's December 2006 loan is not relevant to the issues in this case because Frappier failed to identify that loan, or make any mention of it, in his Complaint.

As this Court has previously explained, courts should look to the complaint "to determine the theory of liability set out therein to which defendants, as the parties moving for summary judgment, [are] required to respond." *Cortes Quinones v. Jimenez Nettleship*, 773 F.2d 10, 11-12 (1st Cir. 1985). In construing

---

articulate any coherent claim, and Frappier has failed to present any argument on this cause of action on appeal. App. at 477-78.

the complaint, it "is axiomatic that a defendant is entitled to know the nature and extent of the claim being made against him." *Campana v. Eller*, 755 F.2d 212, 215 (1st Cir. 1985).  Here, Frappier's Complaint clearly identified the single loan that his claims arise from.  Paragraph 3 of the Complaint specifies that "[t]his Action derives from [Countrywide's] re-financing loan to [Frappier] on property located 26 Matthews Road, Southwick, MA 01077 . . . in the loan amount of $189,500 . . . ."  App. at 33 ¶ 3.  No reference is made in the Complaint to a second loan, and all allegations concern the October 2006 Loan only.  *See* App. at 35 ¶ 11 ("[Countrywide] should not have made *this loan* . . . .") (emphasis added); *id.* at 36 ¶ 12 ("No consideration of the ability of the borrower to repay *this loan* with a realistic means test was made.") (emphasis added); *id.* at 37 ¶ 16 (Countrywide's "loan representative must have known that based on the information provided by the borrower that the borrower could not qualify for *this loan*") (emphasis added).

Based upon the allegations set forth in the Complaint, Countrywide reasonably believed that Frappier only challenged the October 2006 Loan in this litigation, and tailored both its discovery and its Motion accordingly.  To the extent Frappier's arguments rest upon his alternate theory that the Court should view his October and December 2006 loans together, his Complaint failed to apprise Countrywide of "the nature and extent of the claim being made" against it. *Campana*, 755 F.2d at 215.  Frappier should not benefit from such gamesmanship

18

by raising this alternative theory so late in the process, after discovery closed and at great prejudice Countrywide, in a last-ditch attempt to save his claims. The District Court properly rejected such an attempt, and Frappier has given this Court no reason to alter that conclusion. Accordingly, the Court should affirm the District Courts decision to consider only the October 2006 Loan in connection with the merits of Frappier's claims.

### B. The District Court Properly Granted Summary Judgment for Countrywide on Frappier's Unjust Enrichment Claim.

Frappier argues that the District Court erred in granting summary judgment to Countrywide on his claim for unjust enrichment, claiming that Countrywide "stood to benefit from [Frappier's] default," which Countrywide allegedly "knew or should have known was inevitable." Aplt. Br. at 32. Faced with this same argument, the District Court properly concluded that "there is no evidence in this record from which a jury could conclude that [Countrywide] believed or had any reason to believe that [Frappier] was at a heightened risk of default, much less that such default was 'inevitable.'" App. at 475-76. The District Court reached this conclusion based on well-founded support in the undisputed factual record, and such a conclusion bars Frappier's unjust enrichment claim.

To recover for unjust enrichment under Massachusetts law, Frappier must prove three elements: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge on the part of the defendant of the benefit; and

19

(3) acceptance or retention of the benefit by the defendant under circumstances that would make acceptance or retention inequitable." *Giles v. Ramos*, No. 06-P-154, 2007 WL 328757, at *2 (Mass. App. Ct. Feb. 2, 2007) (citing *Foster v. Hurley*, 61 Mass. App. Ct. 414, 420-22, 810 N.E.2d 1266, 1270-72 (Mass. App. Ct. 2004)). Such proof requires more than the defendant's knowing acceptance of a benefit from the plaintiff; "[t]he benefit must be *unjust*, a quality that turns on the reasonable expectations of the parties." *Cmty. Builders, Inc. v. Indian Motocycle Associates, Inc.*, 44 Mass. App. Ct. 537, 560, 692 N.E.2d 964, 979 (Mass. App. Ct. 1998) (citing *Salamon v. Terra*, 394 Mass. 857, 859, 477 N.E.2d 1029, 1031 (Mass. 1985)) (emphasis in original). To support his claim, Frappier contends that Countrywide "wanted and got a contract that it never should have received . . . ." Aplt. Br. at 32. There is simply no evidence that would support Frappier's baseless assertions.

Frappier had an excellent credit score at the time he was approved for the Loan from Countrywide. App. at 67-68 ¶ 12; 291 ¶ 12. The principal amount of his Loan totaled $189,500, which was less than the principal amount of his prior mortgage loan of $193,000. *See* App. at 65, ¶ 2; 69 ¶ 18; 289, ¶ 2; 291 ¶ 18. The interest rate for the Loan had a fixed interest rate for the first seven years, at a relatively low rate of 6.875 percent. App. at 69 ¶ 18; 291 ¶ 18. Moreover, the payments on the Loan were between $1,500 and $1,600 per month – less than or

comparable to the $1,500 to $1,700 monthly payments that Frappier regularly made on his prior mortgage loan.[6]  *See* App. at 65 ¶ 2; 69-70 ¶ 18; 289 ¶ 2; 291 ¶ 18.  Thus, even if the Court assumed that Frappier's income was only $3,300 per month rather than the $5,563 that he claimed on his loan application, there is no reason to believe that Frappier could not make monthly payments in the amount of $1,500 to $1,600, less than half his alleged monthly income.  In short, there are simply no facts that suggest Countrywide should have known that Frappier could not afford the Loan, or that Frappier would not received the Loan if he had disclosed his correct monthly income on his loan application.  Indeed, the undisputed facts of this case point toward exactly the opposite conclusion.

As a secondary attempt to salvage his claim, Frappier asserts that Countrywide should not have given him the loan because the monthly income amount of $5,563 on his loan application was incorrect, claiming without factual support that Countrywide employees inflated his income.  *See* Aplt. Br. at 10, 33.

---

[6]   While Frappier claims that his previous loan "had two income earners" as compared to only one, Frappier produced no evidence to support this assertion either in discovery or in opposition to Countrywide's Motion.  *See* Aplt. Br. at 12.  Frappier's citations to the record confirm only that Frappier's ex-wife was a co-mortgagee on his prior loan, but do not indicate that she assisted him in making loan payments in any way.  Similarly, Frappier's assertion that "even the initial application for the subject loan" had two "income earners," is simply wrong.  *See* Aplt. Br. at 12.  Frappier's citations to the record refer to an application for an entirely different loan, in a greater amount, to purchase an entirely different property.

As Frappier himself admitted before the District Court, however, Countrywide received this information regarding monthly income *from Frappier himself*.  *See* App. at 68 ¶ 13, 291 ¶ 13 (admitting that "Mr. Mamuszka obtained the information that Mr. Frappier's base monthly employment income was $5,563 from Mr. Frappier himself").  Frappier also admitted that he signed both the application containing that information and a document certifying that all of the information contained in the application was correct.[7]  App. at 69 ¶ 17; 291 ¶ 17.  In short, Frappier's position is that although he repeatedly lied to Countrywide about his income, Countrywide was somehow unjustly enriched by not verifying Frappier's misrepresentations.  Unjust enrichment, however, is an equitable remedy, and must "be applied with the focus on fairness and justice."  *Demoulas v. Demoulas*, 428 Mass. 555, 580, 703 N.E.2d 1149, 1169 (Mass. 1998).  Frappier cannot seek to hold Countrywide liable under this theory when he actively misled Countrywide into giving him a loan.

---

[7]  Seeking to shift responsibility for his actions to Countrywide, Frappier claims in his brief that he "gave the Defendant's agents his 'pay stubs, tax returns, bank statements.'"  Aplt. Br. at 12; *see also id.* at 6, 8.  Notably, however, Frappier failed to produce such documents, either in discovery or in opposition to Countrywide's Motion, even though Frappier testified that he still had copies of those documents in his possession.  *See* App. at 219 (59:19-24).  Furthermore, Frappier has failed to produce any evidence to establish that such documents would have shown Frappier's income as *only* $3,300 per month.  Without any evidence in the record of such documents and their contents, Frappier cannot rely on them to defeat summary judgment.

The fact that Frappier ultimately defaulted on his Loan is unfortunate, but not attributable to the terms of the Loan.  At the time of default, Frappier's interest rate had not changed from the 6.875% initial fixed rate, and his payment amounts were the same as they had been at the outset of the Loan.  Frappier himself testified that he began to have difficulty making payments due to a variety of factors – a change in jobs, the high cost of fuel oil, and other incidental expenses – none of which were the cost of the Loan itself.  App. at 70 ¶ 21; 292 ¶ 21.  Upon Frappier's default, Countrywide had the right to pursue those remedies provided for under its contract with him.  *Cf. Murray v. America's Servicing Co.*, No. 2007-01716, 2009 WL 323375, at *6 (Mass. Super. Ct. Jan. 12, 2009) (granting summary judgment on unjust enrichment claim "because [the defendant] has collected only that which was owed to it by [the plaintiff] under the terms of the mortgage and escrow agreements").  Nothing in the undisputed factual record indicates that the Loan or Countrywide's foreclosure was somehow unjust.  Accordingly, the District Court properly granted Countrywide summary judgment on Frappier's claim for unjust enrichment.

### C. The District Court Properly Granted Summary Judgment for Countrywide on Frappier's Claim for Breach of the Covenant of Good Faith and Fair Dealing.

In his second claim, Frappier argues that the District Court erred in granting summary judgment for Countrywide on his claim for breach of the covenant of

good faith and fair dealing. *See* Aplt. Br. at 32-33. In pursuing this claim, Frappier wholly ignores the terms of his mortgage contract with respect to the Loan. Rather, Frappier premises his entire claim upon the theory that Countrywide breached the covenant by granting him a second mortgage loan in December 2006, thereby reducing his equity in the property and increasing his credit risk. Aplt. Br. at 33. As the District Court held, and as discussed in Section I.A. *supra*, however, Frappier failed to provide Countrywide with notice that the December 2006 loan was at issue in this case, and Frappier cannot rely upon that second loan now to save his claims. *See* App. at 476-77.

Moreover, Frappier's theory is inconsistent with the definition of a breach of the covenant of good faith and fair dealing. In order to succeed on such a claim, Frappier must show that Countrywide engaged in "conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure undue economic advantage." *Blue Hills Office Park LLC v. J.P. Morgan Chase Bank*, 477 F. Supp. 2d 366, 374-75 (D. Mass. 2007) (quoting *Christensen v. Kingston Sch. Cmty.*, 360 F. Supp. 2d 212, 226 (D. Mass. 2005) (quotation marks omitted). "The primary source of guidance" in determining whether a violation of the covenant has occurred is "the text of the contractual documents." *Renovator's Supply, Inc. v. Sovereign Bank*, 72 Mass. App. Ct. 419, 433, 892 N.E.2d 777, 789 (Mass. App. Ct. 2008). The covenant

"does not create rights and duties which the parties did not negotiate and include in their agreement." *Id.* (citing cases).

By granting Frappier a second mortgage loan, Countrywide in no way deprived him of the "fruits" of his first mortgage loan or "unfairly leveraged" the terms of the first loan to its own advantage. Even assuming Frappier had properly identified the December 2006 loan as being at issue in this case, and that his theory could facially support a claim for breach of the covenant of good faith and fair dealing, there is no dispute of material fact that would entitle Frappier to relief under that theory. As the District Court observed, "there is no evidence that [Countrywide] believed that either loan, by itself or as a package, was particularly likely to fail." App. at 477. Indeed, because the parties conducted virtually no discovery was conducted on the December 2006 loan, there is virtually no evidence in the record regarding that loan. In the absence of such evidence, Frappier cannot recover for breach of the covenant of good faith and fair dealing, and this Court should affirm the District Court's grant of summary judgment to Countrywide.

### D. The District Court Properly Granted Summary Judgment for Countrywide on Frappier's Negligence Claim.

To prevail on his negligence claim, Frappier must establish that (1) Countrywide owed him a duty of care, (2) Countrywide breached the duty of care, (3) Frappier suffered damages, and (4) Countrywide's breach caused Frappier's

25

damages.  *See Delnegro v. Hampton*, No. 00WAD005, 2001 WL 242210, at *2 (Mass. App. Div. Dist. Ct. Mar. 7, 2001).  The District Court, concluding that Frappier had "identified no legal duty that [Countrywide's] conduct allegedly breached," granted summary judgment to Countrywide on this claim.  App. at 474. This conclusion holds true on appeal.

The relationship between a creditor and debtor, or borrower and lender, does not typically give rise to a duty of care under Massachusetts law.  *See Lechoslaw v. Bank of Am., N.A.*, 575 F. Supp. 2d 286, 297 (D. Mass. 2008) (dismissing negligent infliction of emotional distress claim because "a bank's relationship to its customers is simply one of creditor and debtor" and is merely "an arms-length, business relationship" that cannot give rise to a duty of care) (citation and quotation marks omitted); *see also In re Fordham*, 130 B.R. 632, 646-48 (Bankr. D. Mass. 1991) ("A lender . . . owes to its borrower or guarantor no duty to use reasonable care to determine that a project is sufficiently feasible to permit repayment of the loan. . . . [T]he decisions are legion which deny a cause of action for negligent underwriting of a loan through loose internal lending standards or poor business judgments."); *Murray v. America's Servicing Co.*, No. 2007-01716, 2009 WL 323375, at *5 (Mass. Super. Ct. Jan. 12, 2009) (allowing motion for summary judgment as to negligence claim asserted by borrower against lender because "[a] lender owes no general duty of care to a borrower").

26

There are rare instances where a fiduciary duty might exist between a borrower and lender. *See Levesque v. Ojala*, No. 20034485, 2005 WL 3721859, at *23 (Mass. Super. Ct. Dec. 8, 2005) (suggesting that a fiduciary duty could potentially arise in a lender-borrower relationship) (citing *Shawmut Bank., N.A. v. Wayman*, 34 Mass. App. Ct. 20, 24, 606 N.E.2d 925, 927-28 (Mass. App. Ct. 1993)).  This case is not such a rare instance.  A fiduciary duty may arise between a borrower and lender only "[w]here a plaintiff reposes trust and confidence in the defendant, and the defendant knows of the plaintiff's reliance on him." *Cahaly v. Benistar Prop. Exch. Trust Co., Inc.*, 68 Mass. App. Ct. 668, 680, 864 N.E.2d 548, 560 (Mass. App. Ct. 2007) (citing *Broomfield v. Kosow*, 349 Mass. 749, 754-58, 212 N.E.2d 556, 559-62 (Mass. 1965)).  Frappier has provided no evidence to even suggest that he reposed "trust and confidence" in Countrywide, nor was there any need for him to have such "trust and confidence."  Frappier was an experienced borrower who had taken out at least five mortgages and a home equity line of credit before approaching Countrywide about the Loan.  App. at 65, ¶ 2; 289, ¶ 2. Even if Frappier *had* placed his "trust and confidence" in Countrywide, he failed to provide any evidence to suggest that Countrywide knew that Frappier had done so. Indeed, given Frappier's extensive prior experience with mortgage transactions, it would be unreasonable for Countrywide even to suspect that he had done so.  As a result, no fiduciary duty exists between Frappier and Countrywide. *See Blais v.*

*Warren Five Cents Sav. Bank*, No. 9218, 1993 WL 488429, at *2 (Mass. App. Div. Dist. Ct, Nov. 22, 1993) (holding that "plaintiffs cannot transform the parties' business transaction into one which is fiduciary in nature" by placing trust in the defendant when the defendant is unaware that the plaintiffs are doing so).

Faced with this case law, Frappier grasps wildly at straws, suggesting with no support whatsoever that mortgage lenders have a duty "to insure that borrowers have the financial means to repay its *[sic]* loans," and "that lenders owe a duty of care to consumer borrowers to avoid making unsuitable loans."  Aplt. Br. at 15-16. Even if such duties existed, and they do not, Frappier has not explained how Countrywide breached those duties in *this case*, nor can he.  As Countrywide has already shown in connection with Frappier's claim for unjust enrichment at Section I.B. *supra*, there is no evidence that Countrywide had any reason to believe that Frappier did not have the ability to repay the loan in question.  Frappier's credit score, the fact that his Loan was less than the amount of the prior loan on the same property and his monthly payments were lower than his payments on his prior loan, and the fact that Frappier was able to comply with his divorce agreement by obtaining the Loan from Countrywide all militate toward the inevitable conclusion that Frappier *did* have the financial means to repay the Loan.

Because Frappier has failed to show any issue of material fact as to whether Countrywide owed him a duty of care – or whether such a duty was breached – the

District Court's grant of summary judgment in Countrywide's favor on Frappier's

negligence claim should be affirmed.

###    E.    The District Court Properly Granted Summary Judgment for Countrywide on Frappier's ch. 93A Claim.

Based upon the undisputed facts, Frappier failed establish the elements of

his cause of action under the Massachusetts Consumer Protection Act for supposed

"unfair or deceptive trade practices" in violation of Mass. Gen. Laws ch. 93A

("Chapter 93A").  In order for conduct to be prohibited by Chapter 93A, it must

fall within "the penumbra of some common-law, statutory, or other established

concept of unfairness" and be "immoral, unethical, oppressive, or unscrupulous."

*Blue Hills Office Park*, 477 F. Supp. 2d at 376 (quoting *Linkage Corp. v. Trustees*

*of Boston Univ.*, 425 Mass. 1, 27, 679 N.E.2d 191, 209 (Mass. 1997)).  Here,

Frappier premised his Chapter 93A claim on the same conduct comprising his

other claims, and there is no genuine dispute of material fact that so much as

suggests that Countrywide should not have granted Frappier the Loan.  Frappier

cannot prevail on a Chapter 93A claim where that claim's sole basis is on other,

legally permissible conduct.  *See, e.g.*, *Bueller v. Carey*, No. 00-P-1318, 2003 WL

193958, at *3 (Mass. App. Ct. Jan. 29, 2003) (where court had already rejected

plaintiff's tortious interference claim, this "otherwise lawful activity was not

rendered unlawful by reason of" Chapter 93A); *see also Blue Hills Office Park*,

477 F. Supp. 2d at 376-77 (dismissing Chapter 93A claim premised solely on

29

breach of contract claims the court had already rejected); *In re Holland*, Bkrtcy.

No. 04-18099, 2008 WL 4809493, at *12 (Bankr. D. Mass. Oct. 30, 2008) ("[t]he

Debtor cannot prevail on her [Chapter 93A] claim at trial because the claim is

solely predicated on the RESPA violation which the Court has rejected."). Here,

Frappier's primary argument on appeal for his Chapter 93A claim is that

Countrywide knew or should have known that he would default on his Loan. *See*

Aplt. Br. at 27-30. As discussed *supra* in connection with Frappier's other claims,

however, no such evidence exists in the undisputed factual record, nullfying

Frappier's Chapter 93A claim.

Moreover, the mere fact that Frappier received a stated income, stated asset

loan does not justify a claim under Chapter 93A. As Justice Gants of the

Massachusetts Supreme Judicial Court has previously remarked, "a borrower may

not fairly complain that a bank was unfair to him by giving him an opportunity to

lie on his loan application without any meaningful risk of getting caught."

*Commonwealth v. Fremont Inv. & Loan*, No. 07-4373-BLS1, 2008 WL 517279, at

*11 (Mass. Super. Ct. Feb. 26, 2008). That is precisely what has occurred here –

Countrywide relied on a loan application comprised solely of the information

provided by Frappier himself. The mere fact that Frappier had the opportunity to

misrepresent his financial situation in order to obtain the loan he so desperately

needed does not allow Frappier to then bring a claim against Countrywide for

30

giving him the opportunity to make such misrepresentations.  In fact, Frappier agreed during his deposition that he, rather than Countrywide, would be responsible for "any intentional or negligent misrepresentation" of the information contained in the application.  *See* App. at 69 ¶ 17; 291 ¶ 17.  Since Frappier has admitted that the incorrect income information came directly from him, Frappier cannot now hold Countrywide responsible for his misrepresentations.

Frappier's attempts to shoehorn in his December 2006 second loan into his Chapter 93A claim must likewise fail because, as discussed in Section I.A. *supra*, the December 2006 loan is not properly before this Court on appeal and cannot justify overturning the District Court's decision.  Accordingly, the District Court properly granted summary judgment for Countrywide on this claim as well, and this Court should affirm that decision.

## II.    THIS COURT SHOULD REJECT FRAPPIER'S ATTEMPT TO PRESENT ISSUES BEYOND THOSE BEFORE THE DISTRICT COURT.

Given his failure to identify any material fact that would preclude summary judgment on any of the claims actually set forth in the Complaint, it is unsurprising that most of Frappier's opening brief fails to focus on either the material undisputed facts or the elements of his claims.  Rather, Frappier spends much of his space faulting the District Court for overlooking legal arguments that Frappier did not present in any meaningful way in the proceedings below.  Because the

31

District Court did not have the opportunity to consider those arguments, they cannot support reversing the District Court's judgment now.

For example, Frappier's opening brief argues for the first time that Countrywide violated federal and state truth-in-lending requirements by failing to give him timely disclosures, giving rise to a cause of action under Mass. Gen. Laws ch. 93A. Aplt. Br. at 16-18.[8] Additionally, Frappier also now claims that Mass. Gen. Laws ch. 183, § 28C creates an "adverse inference against [Countrywide] that was suppose *[sic]* to be made by the undisputed fact that Countrywide] was adding another loan to a series of re-financing of the Frappier's property." Aplt. Br. at 13, 16. Finally, with a lengthy block quote of statutory language devoid of any real analysis or explanation, Frappier argues for the first time that Countrywide violated 940 C.M.R. §§ 8.05(2), 8.06(11)(a)-(b), 8.06(16),

---

[8] This new argument also contradicts the undisputed facts of this case. Frappier admitted that he had received a number of documents at closing, but that he did not know what had happened to them, given that he had thrown out many documents when he moved out of the Property. *See* App. at 70 ¶ 19, 292 ¶ 19. Moreover, Frappier also admitted that he had signed a Truth in Lending Disclosure statement, and in discovery, Frappier produced a copy of the signed Truth in Lending Disclosure, demonstrating that he had in fact received it. App. at 70 ¶ 20; 223 (74:3-19); 292 ¶ 20. Based on these admissions, Frappier cannot state a claim for rescission for failing to receive disclosures when has produced on competent evidence to show he did not receive them. Although Frappier later submitted an affidavit stating he had not received the Truth in Lending Disclosure statement, *see* App. at 304-05, "a party opposing summary judgment may not manufacture a dispute of fact by contradicting his earlier sworn testimony without a satisfactory explanation of why the testimony is changed." *Abreu-Guzman v. Ford*, 241 F.3d 69, 74 (1st Cir. 2001).

provisions of the Code of Massachusetts Regulations that (as Frappier himself admits) were not adopted until 2008, after the conduct at issue here.  Aplt. Br. at 18-21.[9]

Frappier either omitted these legal arguments from his briefs to the District Court or, at the very least, failed to present them in any cognizable manner.  *See generally* App. at 377-85, 431-33.  This Court has repeatedly reaffirmed the rule that "theories not squarely and timely raised in the trial court cannot be pursued for the first time on appeal."  *Iverson v. City of Boston*, 452 F.3d 94, 102 (1st Cir. 2006).  Instead, litigants must "spell out their legal theories face-up and squarely in the trial court; if a claim is 'merely insinuated' rather than 'actually articulated,' that claim is ordinarily deemed unpreserved for purposes of appellate review."  *Id.* (quoting *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 22 (1st Cir. 1991)).  Frappier failed to articulate or even insinuate his new arguments in the proceedings below – his passing mentions of Mass. Gen. Laws ch. 183 or certain Massachusetts regulations, without any analysis or application of such legal principles to the facts of his claims, simply do not rise to the level of properly presented arguments. Frappier's current claims are no more than "transparent afterthoughts and

---

[9]   Although Frappier's memorandum opposing Countrywide's Motion does make a passing mention to Mass. Gen. Laws ch. 183, § 28C and generic references to the Massachusetts regulations, nothing in his opposition to the Motion even remotely approaches coherent argument or attempts to explain how Countrywide violated these statutes or regulations.  *See* App. at 382.

alternative defenses burnished for appeal" after his prior arguments failed.  *In re Net-Velazquez*, 625 F.3d 34, 41 (1st Cir. 2010).  Because Frappier did not present these arguments to the District Court, he has waived them, and this Court should reject his invitation to find fault with the District Court's reasoning on grounds that the District Court never received an opportunity to address.

## **CONCLUSION**

For the foregoing reasons, defendant/appellee Countrywide Home Loans, Inc. respectfully requests that this Court affirm the District Court's Order granting summary judgment in Countrywide's favor.

Respectfully submitted,

COUNTRYWIDE HOME LOANS, INC.

By its attorneys,

/s/ Mark Tyler Knights
James W. McGarry (1st Cir. Bar No. 56839)
jmcgarry@goodwinprocter.com
Brook L. Ames (1st Cir. Bar No. 1135044)
bames@goodwinprocter.com
Mark T. Knights (1st Cir. Bar No. 1143456)
mknights@goodwinprocter.com
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
Tel.  617.570.1000
Fax  617.523.1231

Dated:  February 7, 2011

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, Mark Tyler Knights, counsel for Countrywide Home

Loans, Inc., hereby certifies pursuant to F.R.A.P. 32(a)(7)(C) that the Brief for

Defendant-Appellant complies with the type-volume limitations of F.R.A.P.

32(a)(7)(B). According to the word count of Microsoft Word for Windows, the

word-processing system used to prepare the brief, the brief contains 8,501 words.

/s/ Mark Tyler Knights
Mark T. Knights (1st Cir. Bar No. 1143456)
mknights@goodwinprocter.com
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
Tel.  617.570.1000
Fax  617.523.1231

Dated:  February 7, 2011

## **CERTIFICATE OF SERVICE**

I, Mark Tyler Knights, hereby certify that on February 7, 2011, the foregoing brief was served via the ECF system upon the following counsel of record:

Valeriano Diviacchi, Esq.
Diviacchi Law Office
111 Beach Street, #1A
Boston, MA  02111-2532

I further certify that the foregoing brief was served via first-class mail, postage prepaid, upon the following counsel of record:

Frank Saia, Esq.
Saia Law Firm
106 State St.
Springfield, MA 01103

/s/ Mark Tyler Knights
Mark T. Knights (1st Cir. Bar No. 1143456)
mknights@goodwinprocter.com
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
Tel.  617.570.1000
Fax  617.523.1231